## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

DSCC a/k/a DEMOCRATIC
SENATORIAL CAMPAIGN
COMMITTEE; and BILL NELSON FOR
U.S. SENATE,

      Plaintiff,

      v.

KENNETH W. DETZNER, in his official
capacity as the Florida Secretary of State,

      Defendant.

Case No.  4:18-cv-526

## COMPLAINT FOR INJUNCTIVE AND
## DECLARATORY RELIEF

Plaintiffs the DSCC a/k/a DEMOCRATIC SENATORIAL CAMPAIGN

COMMITTEE and BILL NELSON FOR U.S. SENATE ("Nelson Campaign")

(collectively, "Plaintiffs"), by and through the undersigned attorneys, file this

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF against

Defendant KEN DETZNER, in his official capacity as Florida Secretary of State

("Defendant"), and allege upon information and belief as to all others as follows:

## NATURE OF THE CASE

1.    "It is beyond cavil that 'voting is of the most fundamental

significance under our constitutional structure.'" *Burdick v. Takushi*, 504 U.S.

1

428, 433 (1992) (citation omitted). And "[o]bviously included within the right to choose, secured by the Constitution, is the right of qualified voters within a state to cast their ballots and have them counted." *Reynolds v. Sims*, 377 U.S. 533, 555 (1964) (citation and internal quotation marks omitted). Plaintiffs bring this lawsuit, on an expedited basis, to prevent the disenfranchisement of scores of Floridians whose votes in the 2018 general election are at risk of not being counted if Defendant is not enjoined from rejecting their ballots on the basis of unconstitutional standards.

2.      In the U.S. Senate race in Florida, the first unofficial election results showed Republican Governor Rick Scott ahead of Democratic incumbent Bill Nelson by less than 0.25 percentage points. Accordingly, as required under Florida law, Defendant, as Secretary of State, ordered a statewide machine recount, the results of which are due by no later than 3:00 p.m. on Thursday, November 15, 2018. Further, because the margin is already narrower than 0.25%, it is virtually certain that Defendant will be required to order a *manual* recount of the U.S. Senate race, to be conducted by all 67 county canvassing boards, beginning at or around 3:00 p.m. on Thursday, November 15.

3.      Immediately thereafter, local canvassing boards throughout the State must begin manually examining ballots with overvotes and undervotes for the U.S. Senate race, which could not be counted through the machine recount, and must count those ballots in which the voter clearly indicated her choice for the race. Unless

relief is granted, scores of Florida voters will be unconstitutionally disenfranchised because, in deciding whether to count or reject these ballots, local canvassing boards will apply two demonstrably unconstitutional rules for determining a voter's intent on a ballot—rules promulgated by the Secretary of State that arbitrarily treat similarly-situated voters differently and will result in the disproportionate rejection of ballots cast by language minorities and those with limited literacy.

4.     *First*, Rule 1S-2.027(4)(b) of the Florida Administrative Code (hereinafter "Rule 1S-2.027") requires a voter to have marked any and all marked contests in the same manner for a ballot flagged as an overvote or undervote to be counted. In other words, as illustrated in Example A below, even if a voter clearly indicated her intent to vote for Candidate B for Senate, for example, by circling "Candidate B" for the senate race, that vote will not count if she made her choice in a different *manner* for a *different* race, for example by bubbling in the bubble for her candidate of choice in the governor race.



| Example A: Invalid Vote for Senator | Example B: Valid Vote for Senator | Example C: Valid Vote for Senator |
| --- | --- | --- |

5.    *Second*, Rule 1S-2.027(4)(c)(15) provides that if the voter erroneously selects two or more choices and additionally writes in comments such as "not this," "ignore this," "don't want," "wrong," or "Vote for [candidate's name]," such additional written comments "clearly indicate[]" the voter's intent to cancel the erroneous overvotes, and the single remaining choice constitutes the "voter's definite choice" and is counted as a valid vote, as illustrated in Examples E and F below (the "Magic Words Requirement"). However, a voter who has crossed out, stricken through, or scribbled out an erroneous choice (without the use of any written "magic words") is presumably *not* similarly treated as having indicated a clear intent to cancel the crossed-out or stricken choices such that the remaining choice

constitutes a valid vote, as illustrated in Example D below. The latter voter's ballot is simply not counted, resulting in total disenfranchisement.



| Example D:<br>Invalid Vote for Senator | Example E:<br>Valid Vote for Senator | Example F:<br>Valid Vote for Senator |
| --- | --- | --- |

6.     These unconstitutional ballot-counting rules subject Florida voters to disparate treatment and arbitrary disenfranchisement in violation of the Fourteenth Amendment's Equal Protection Clause and violates the prohibition against undue burdens on the right to vote in violation of the First and Fourteenth Amendments to the U.S. Constitution.

## JURISDICTION AND VENUE

7.     Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the U.S. Constitution.

8.     This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States.

9.     This Court has personal jurisdiction over Defendant, who is sued in his official capacity only.

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because a substantial part of the events that gave rise to Plaintiffs' claim occurred in this judicial district.

11.     This Court has the authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief pursuant to Rules 57 and 65 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

12.     Plaintiff DSCC is the national senatorial committee of the Democratic Party, as defined by 52 U.S.C. § 30101(14), and its mission is to elect candidates of the Democratic Party to the United States Senate, including in Florida. The DSCC works to accomplish its mission across the country and in Florida by, among other things, making expenditures for, and contributions to, Democratic candidates for U.S. Senate and assisting state parties throughout the country, including in Florida. In 2018, DSCC has supported the candidacy of Democratic Senator Bill Nelson for re-election to the U.S. Senate, and, as a result, has made substantial contributions and expenditures in support of his candidacy. The "Consistency" and "Magic Words" Requirements, which result in the arbitrary rejection of the clearly indicated

votes of its supporters, directly harms the DSCC by frustrating its mission of, and efforts in, electing the Democratic Party candidate to the U.S. Senate in Florida.

13.    DSCC has millions of members and constituents from across Florida, including millions of Floridians who are registered with the Florida Department of State's Division of Elections as Democrats, and many other Floridians who regularly support and vote for candidates affiliated with the Democratic Party. Among its members and constituents are Florida voters whose ballots will be rejected, and who will therefore be disenfranchised, absent injunctive relief. DSCC brings this claim on its own behalf, as well as on behalf of its members and constituents.

14.    Plaintiff BILL NELSON FOR U.S. SENATE is a duly organized political campaign in support of Bill Nelson's election to the United States Senate, representing the State of Florida.

15.    Defendant KEN DETZNER is sued in his official capacity as Secretary of State of the State of Florida. Defendant Detzner is a person within the meaning of 42 U.S.C. § 1983 and acts under color of state law. Pursuant to Florida Statute § 97.012, the Secretary of State is the chief elections officer of the State and is therefore responsible for the administration of state laws affecting voting, including with respect to the general election on November 8, 2016. As Secretary of State, Defendant Detzner's duties consist, among other things, of "[o]btain[ing] and maintain[ing] uniformity in the interpretation and implementation of the election

laws." *Id.* at § 97.012(1). The Secretary of State is also tasked with ensuring that county supervisors . . . perform their . . . statutory duties, *see id.* at § 97.012(14), is responsible for providing technical assistance to county supervisors on voter education, election personnel training services, and voting systems, *see id.* at §§ 97.012(4)-(5), and is responsible for "[p]rovid[ing] written direction and opinions to the supervisors of elections on the performance of their official duties with respect to the Florida Election Code or rules adopted by the Department of State." *Id.* at § 97.012(16).

## STATEMENT OF FACTS AND APPLICABLE LAW

**1.     The Margin in the U.S. Senate Race Will Trigger a Manual Recount**

16.     By 11 a.m. on Wednesday, November 7, preliminary results from the November 6, 2018 election showed a razor-thin margin in the U.S. Senate race between Democratic incumbent Senator Bill Nelson and Republican candidate, Governor Rick Scott, making the race too close to call and raising the strong possibility of a recount. At that time, the Division of Elections was reporting that Scott had received 50.19 percent of the vote to Bill Nelson's 49.81 percent.[1]

17.     The first unofficial returns were due to the Secretary of State by local supervisors of elections by noon on Saturday November 10. *See* Fla. Stat. §

---

[1] Janine Haseman, *Here's how close the too-close-to-call Florida Senate Race is*

102.141(5). The unofficial returns for the U.S. Senate race showed Scott ahead of Nelson by a mere 12,562 votes out of the more than 8.1 million votes cast statewide, or 0.15%.[2]

18.    Under Florida law, "[i]f the unofficial returns reflect that a candidate for any office was defeated or eliminated by one-half of a percent [0.5%] or less of the votes cast for such office . . . a recount shall be ordered of the votes cast with respect to such office." Fla. Stat. § 102.141(7). The Secretary of State, "is responsible for ordering recounts in federal, state, and multicounty races." Id.

19.    Accordingly, on Saturday, November 10, Secretary Detzner, ordered a statewide machine recount in Florida's Senate race, as well as a number of other races that fell within the statutory margin.[3] Pursuant to Fla. Stat. § 102.141(7)(c),

---

between Rick Scott and Bill Nelson, NAPLES DAILY NEWS (Nov. 7, 2018), https://www.naplesnews.com/story/news/politics/elections/2018/11/07/how-close-florida-senate-race-between-rick-scott-and-bill-nelson/1918514002/.

[2] John Cherwa, Recounts ordered in Florida's U.S. Senate and Governor's races, LOS ANGELES TIMES (Nov. 10, 2018), http://www.latimes.com/nation/la-na-florida-election-recount-20181110-story.html.

[3] See Ken Detzner, Secretary of State Order on Conduct of Machine Recount (Nov. 10, 2018), https://dos.myflorida.com/media/700282/machine-recount-order-senate.pdf. Pursuant to Florida Statutes § 102.141(7), because the unofficial returns reflected that candidates for the offices of U.S. Senator, Governor, Commissioner of Agriculture, and three state legislative districts were defeated or eliminated by one-half of a percent or less of the votes cast for such offices, Defendant ordered a recount of the votes cast with respect to each such office. Gray Rohrer, et al. Florida vote: Recounts ordered for U.S. Senate, governor, agriculture commissioner, ORLANDO SENTINEL (Nov. 10, 2018), http://www.orlandosentinel.com/news/politics/political-pulse/os-florida-recount-

Secretary Detzner ordered that Florida's 67 counties return the results of this machine recount by 3:00 p.m. on Thursday, November 15. *Id*. These machine recount results will be the second set of unofficial returns.

20.    The machine recount requires all ballots to be re-tabulated, or re-fed, through tabulation machines. During this process, all ballots with "undervotes" or "overvotes" in the recounted race(s) are set aside, in the event that a manual or hand recount is triggered.

21.    An "overvote" occurs when a voter designates more choices than allowed for the race(s) at issue, and an "undervote" occurs when a voter either makes no designation, or selects fewer than allowed, in the race(s) at issue. *See* Rule 1S-2.027(6). The tabulating machines will automatically identify all overvotes and undervotes that must be set aside. Fla. Stat. § 102.166(2)(b).

22.    The returns from the machine recount, or the second set of unofficial returns, determine whether a manual recount is required. If the margin of victory is 0.25% or less of the total votes cast, a manual recount of all undervotes and overvotes is triggered unless a candidate waives the manual recount in writing or the number of undervotes and overvotes is insufficient to change the outcome of the race. *See* Fla. Stat. § 102.166(1) (setting forth conditions precedent for manual recount).

---

vote-tally-deadline-20181110-story.html.

23.    Because the first unofficial returns already indicate a margin of less than 0.25% in Florida's U.S. Senate race, and early reports show that there are enough undervotes and overvotes to potentially affect the outcome of the election, a manual recount of all overvotes and undervotes in that race is inevitable.[4]

24.    Therefore, once Defendant receives the second set of unofficial returns on Thursday, November 15 at 3:00 p.m., he will be required to order a manual recount of the U.S. Senate race, and any other impacted races, at that time, and local canvassing boards must begin the manual recount process immediately thereafter.

25.    The official returns, which are to include all manual recount results, are due by noon on Sunday, November 18, *see* Fla. Stat. Ann. § 102.112(2), or else the recount results will be ignored, *id.* at (3), absent a statutorily-defined "emergency." *Id*. at (4); *see* Fla. Stat. § 101.732(3) ("'Emergency' means any occurrence, or threat thereof, whether accidental, natural, or caused by human beings, in war or in peace, that results or may result in substantial injury or harm to the population or substantial damage to or loss of property to the extent it will prohibit an election officer's ability to conduct a safe and orderly election.").

---

[4] *See* Nate Cohn and Kevin Quealy, *A Mysterious 'Undervote' Could End Up Settling the Florida Senate Race*, NEW YORK TIMES (Nov. 9, 2018), https://www.nytimes.com/2018/11/09/upshot/florida-senate-race-broward-undercount.html (explaining significant undervote anomaly in Broward County that might, in and of itself, impact nearly as many ballots as the current Senate margin).

2.     **The Manual Recount Process**

26.     A manual recount is solely a recount of all overvotes and undervotes that were set aside during the machine recount process. To effectuate this process, the canvassing board must designate "counting teams" to manually review all overvotes and undervotes to determine the voters' intent in the recounted race(s).

27.     If a counting team is unable to determine a voter's intent, or if a candidate's representative files an objection to the counting team's decision, then the canvassing board must determine the voter's intent. Fla. Admin. Code Ann. r. 1S-2.031(5)(c). The determination of a majority of the canvassing board controls. Fla. Stat. § 102.166(5)(c); Fla. Admin. Code Ann. r. 1S-2.031(2)(a).

28.     Florida law provides that, during a manual recount, "[a] vote for a candidate [ . . . ] *shall* be counted if there is a clear indication on the ballot that the voter has made a definite choice." Fla. Stat. § 102.166(4)(a) (emphasis added).

29.     Section 102.166 also instructs the Department of State to "adopt specific rules . . . prescribing what constitutes a 'clear indication on the ballot that the voter has made a definite choice.'" *Id.* § 102.166(4)(b).

30.     The Department of State, through Defendant and his predecessors in office, adopted rules purporting to prescribe what constitutes a "clear indication on

the ballot that the voter has made a definite choice." Those rules are set forth in Rule 1S-2.027.

**3.      The "Consistency Requirement"**

31.      Rule 1S-2.027 sets forth a two-step test for a manual review of a voter's markings on the ballot to determine whether there is a clear indication on the ballot that the voter has made a definite choice.

32.      First, Rule 1S-2.027 states that "[t]he canvassing board must first look at the entire ballot for consistency." Rule 1S-2.027(4)(b). The canvassing board must determine whether a) the voter has not marked any other contest on the ballot, or b) if the voter has marked other contests, whether she has marked all other contests in the same manner as the contest being manually recounted.

33.      Second, if the canvassing board determines that the voter has not marked any other contest on the ballot, or that the voter marked all contests on the ballot in the same manner, the canvassing board applies a set of specific rules to determine whether the voter has made a definite choice in the contest.

34.      As a result, in order for a ballot flagged by the automatic tabulation system as an overvote or undervote to be counted, the voter must have marked other

contests in the same manner. This Consistency Requirement is subject to only a few limited exceptions. *See* Rule 1S-2.027(4)(b).[5]

35. Rule 1S-2.027 provides examples applying the Consistency Requirement to ballots.



**Figure 1: "Ballot Situation 1"**

---

[5] Rule 1S-2.027(b) sets forth three limited exceptions to the Consistency Requirement. First, if a voter marks all of the choices for a single contest, but further clarifies a choice for a particular candidate by placing an additional mark(s) showing support solely for that particular candidate, Rule 1S-2.027 deems such additional

36.     Rule 1S-2.027(4)(b) describes "Ballot Situation 1" as follows:

> *Recount in race of State Representative. The two ovals in the first two races are filled in properly, but the voter has circled the candidate's name in the state representative race. Since the voter did not mark the state representative race in the same manner as in the other races, it cannot be determined whether the voter has clearly indicated a definite choice for Don Nichols.*

37.     By contrast, Rule 1S-2.027(4)(b) describes "Ballot Situation 2" as follows:

> *Recount in race of State Representative. All races on this ballot are marked in the same manner. Since the ballot is consistently marked as in paragraph (c), the vote cast for Michael Ross in the state representative race is a valid vote.*

---

mark to constitute a valid vote. Rule 1S-2.027(c)(7). Second, if the voter fills in the majority of an oval, or the majority of the distance between the head and the tail of an arrow designating a particular candidate, Rule 1S-2.027 deems such additional mark to constitute a valid vote regardless of how other races on the ballot are marked. Rule 1S-2.027(c)(10). Third, if the voter marks two or more choices similarly in one of the ways indicated in Rule 1S-2.027(c)(1)-(14) and additionally writes in comments such as "not this," "ignore this," "don't want," or "wrong," or "Vote for [candidate's name]," Rule 1S-2.027 deems such additional written-in comments that "clearly indicate[]" the "voter's definite choice" to constitute a valid vote.



**Figure 2: "Ballot Situation 2"**

38.    Thus, under Rule 1S-2.027(4)(b)'s Consistency Requirement, the

voter's mark for Don Nichols in "Ballot Situation 1" would be deemed invalid, while

the voter's mark for Michael Ross in "Ballot Situation 2" would be deemed valid.

This disparate result would obtain even though the practice of circling a candidate's

name is otherwise deemed a valid vote under Rule 1S-2.027(4)(c)(1), and even

though the voters in "Ballot Situation 1" and "Ballot Situation 2" used identical marks to indicate their choice of candidate for State Representative.

**4.    The "Magic Words" Requirement**

39.    Rule 1S-2.027(4)(c)(15) provides that if the voter marks two or more choices similarly in one of the ways indicated in Rule 1S-2.027(4)(c)(1)-(14) and additionally writes in comments such as "not this," "ignore this," "don't want," "wrong," or "Vote for [candidate's name]," "such that the voter's definite choice is clearly indicated," the remaining choice constitutes a valid vote. Rule 1S-2.027(4)(c)(15) provides the following example as a valid vote:



40.    No other provision of Rule 1S-2.027 discusses additional ways that a voter who has marked two or more choices can convey her intention to correct an erroneous choice and designate her correct choice. For example, no provision of Rule 1S-2.027 provides that a voter who has crossed out with an "X," stricken

through, or scribbled out one choice, and then marked a different choice in one of the ways permitted by Rule 1S-2.027(3)(b) or Rule 1S-2.027(4)(c)(1)-(14), has thereby cast a valid vote.

41.     Indeed, Fla. Stat. Ann. § 102.166(4)(b)(2) expressly provides that the rules for determining voter intent may not "[c]ontain a catch-all provision that fails to identify specific standards, such as 'any other mark or indication clearly indicating that the voter has made a definite choice.'" Therefore, the absence of a specific rule specifying other means of cancelling out an erroneous selection besides the use of "magic words" suggests that Defendant requires that the use of such "magic words" is the only acceptable means of cancelling out an erroneous selection and canvassing boards would be loath to depart from the standards explicitly established by Defendant in Rule 1S-2.027.

42.     Though Rule 1S-2.031(5)(c)(7) provides that "the canvassing board shall review the outstacked ballots for which a determination of a voter's choice could not be made" and "[b]ased on that review, the board shall notify the Division of Elections to determine if the standards for determining a voter's choice as set forth in law or adopted by rule . . . should be revised to better determine the voter's choice," the process would provide no relief to voters in November 2018 election

since such any changes from these recommendations would occur after the manual recount for this election is already complete.

43.     As a result, Rule 1S-2.027, as drafted, purports to require that a voter must use written comments on the ballot containing one or more "magic words" in order to convey her intent to correct an erroneous choice and designate her correct choice over crossed-out, stricken, or scribbled-out choice.

## CLAIMS FOR RELIEF

## COUNT I

**Rule 1S-2.027(4)(b) Violates Equal Protection**
**U.S. Const. Amend. XIV, 42 U.S.C. § 1983, 28 U.S.C. § 2201, 28 U.S.C. § 2202**

44.     Plaintiffs incorporate by reference and reallege paragraphs 1 to 43 of this Complaint.

45.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This constitutional provision requires "that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see also Bush v. Gore*, 531 U.S. 98, 104-05 (2000) (holding Equal Protection Clause applies to "the manner of [the] exercise [of voting]" and "once granted the right to vote on

equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another").

46.    Rule 1S-2.027(4)(b)'s Consistency Requirement imposes different and severe burdens on the right to vote for qualified voters who are similarly situated. Under the Consistency Requirement, two voters whose ballots contain an identical and equally clear indication of their definite choice in the manually recounted contest are treated differently solely based upon how they indicated their choices as to *other* contests on the same ballot. For example, if a voter circles the name of her chosen candidate for U.S. Senate, but fills in the ovals for candidates in all other contests on her ballot, her vote for U.S. Senate will not be counted in the manual recount—even though Rule 1S-2.027(4)(c)(2) expressly provides that a circled name of a candidate constitutes a valid vote. By contrast, if another voter circles the name of her chosen candidate in the U.S. Senate race, and also circles the name of candidates in all other contests on her ballot, her vote will be counted in the manual recount.

47.    In addition, under the Consistency Requirement, two voters whose ballots contain an identical and equally clear indication of their definite choice in one contest are treated differently solely based upon their decision whether to vote in other contests on the ballot. If a voter chooses only to vote in a single contest, the Consistency Requirement does not apply, and the voter's mark is counted so long as it falls into one of the categories enumerated in Rule 1S-2.027(4)(c)(1)-(15). *See*

Rule 1S-2.027(4)(b). By contrast, if a voter chooses to vote in more than one contest on her ballot, the Consistency Requirement applies, and the voter's choice is not counted unless she used the same mark in other contests on her ballot, even if the inconsistent mark at issue falls into one of the categories enumerated in Rule 1S-2.027(4)(c)(1)-(15).

48.    Based on the foregoing, Defendant, acting under color of state law, has deprived and will continue to deprive Plaintiffs, and their members, constituencies, and the voters who support them, of equal protection in violation of the Fourteenth Amendment to the United States Constitution and protected by 42 U.S.C. § 1983, which will subject them to serious, concrete, and irreparable injuries, including, most immediately, in the 2018 general election. Injunctive and declaratory relief is needed to protect these disparately impacted voters from total disenfranchisement.

## **COUNT II**

### **Rule 1S-2.027(4)(b) Imposes an Undue Burden on the Right to Vote U.S. Const. Amends. I and XIV, 42 U.S.C. § 1983**

49.    Plaintiffs incorporate by reference and reallege paragraphs 1 to 48 of this Complaint.

50.    Under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, a State cannot utilize election practices that unduly burden the right to vote. In a case such as this, the Court must carefully balance the

character and magnitude of injury to the First and Fourteenth Amendment rights that the plaintiffs seek to vindicate against the justifications put forward by the State for the burdens imposed by the challenged provision. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983). "However slight th[e] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 191 (2008) (Stevens, J., controlling op.) (quotation marks omitted).

51.    Here, Rule 1S-2.027(4)(b)'s Consistency Requirement imposes a severe burden—disenfranchisement—on the right to vote of scores of qualified voters who cast those ballots by discarding their votes based solely on the fact that the voter did not indicate their choice for the race at issue in the *same manner* as for other races on the ballot, even though the voter clearly indicated her definite choice in a manner recognized as a valid vote in Rule 1S-2.027(4)(c).

52.    These burdens are not outweighed by any legitimate, much less compelling, state interest. Indeed, Florida law requires that "[a] vote for a candidate or ballot measure be counted if there is a clear indication on the ballot that the voter has made a definite choice." Fla. Stat. § 102.166(4)(a). Here, the Consistency Requirement operates to invalidate a vote even though the voter has clearly indicated her definite choice in a manner recognized as a valid vote under

22

Rule 1S-2.027(4)(c). Without relief from this Court, these voters will be deprived of their right to vote in the November election and to have their vote counted.

53.     Based on the foregoing, Defendant, acting under color of state law, has unduly burdened and will continue to unduly burden the right to vote of Plaintiffs and their members, constituencies, and the voters who support them, in violation of the First and Fourteenth Amendments to the United States Constitution and protected by 42 U.S.C. § 1983, which will subject them to serious, concrete, and irreparable injuries, including, most immediately, in the 2018 general election. Injunctive and declaratory relief is needed to protect these voters from total disenfranchisement.

## COUNT III

**Rule 1S-2.027(4)(c)(15) Violates Equal Protection**
**U.S. Const. Amend. XIV, 42 U.S.C. § 1983, 28 U.S.C. § 2201, 28 U.S.C. § 2202**

54.     Plaintiffs incorporate by reference and reallege paragraphs 1 to 53 of this Complaint.

55.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This constitutional provision requires "that all persons similarly situated should be treated alike." *City of Cleburne*, 473 U.S. at 439; see also *Bush*, 531 U.S. at 104-05 (holding

Equal Protection Clause applies to "the manner of [the] exercise [of voting]" and "once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another").

56.    Rule 1S-2.027(4)(c)(15)'s Magic Words Requirement imposes different and severe burdens upon the right to vote for similarly situated qualified voters. Under the rule, two voters who have marked multiple candidates in the same contest and whose ballots contain a clear indication of their definite choice are treated differently solely based on whether they indicate their intent to cancel out their erroneous selection by writing certain "magic words" on their ballot rather than by crossing out, striking through, or scribbling out the erroneous selection. For example, if a voter circles the names of two candidates in a particular race, but then crosses out one of the two candidates, her vote in the manually recounted contest is rejected. By contrast, if another voter circles the names of two candidates in a particular race, then crosses out one of the two candidates, and also writes the word "No" next to the crossed-out candidate, her vote in the manually recounted contest is counted.

57.    The Magic Words Requirement does not further any legitimate state interest that would justify the disparate, arbitrary, and unreasonable treatment of similarly-situated voters. Indeed, Florida law requires that "[a] vote for a candidate or ballot measure be counted if there is a clear indication on the ballot

24

that the voter has made a definite choice." Fla. Stat. § 102.166(4)(a). Here, the Magic Words Requirement operates to invalidate a vote even though the voter has clearly indicated her definite choice by crossing out, striking through, or scribbling out the erroneous selection. Without relief from this Court, these voters will be deprived of their right to vote, and to have their vote counted, in the November election.

58.     Based on the foregoing, Defendant, acting under color of state law, has deprived and will continue to deprive Plaintiffs, and their members, constituencies, and the voters who support them, of equal protection in violation of the Fourteenth Amendment to the United States Constitution and protected by 42 U.S.C. § 1983, which will subject them to irreparable injuries, including, most immediately, in the 2018 general election. Injunctive and declaratory relief is needed to protect these disparately impacted voters from total disenfranchisement.

## COUNT IV

**Rule 1S-2.027(4)(c)(15) Imposes an Undue Burden on the Right**
**U.S. Const. Amends. I and XIV, 42 U.S.C. § 1983**

59.     Plaintiffs incorporate by reference and reallege paragraphs 1 to 58 of this Complaint.

60.     Under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, a State cannot utilize election practices that unduly

burden the right to vote. In a case such as this, the Court must carefully balance the character and magnitude of injury to the First and Fourteenth Amendment rights that the plaintiffs seek to vindicate against the justifications put forward by the State for the burdens imposed by the challenged provision. *See Burdick*, 504 U.S. at 434; *Anderson*, 460 U.S. at 789. "However slight th[e] burden may appear, . . . it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford*, 553 U.S. at 191 (Stevens, J., controlling op.) (quotation marks omitted).

61.     Rule 1S-2.027's Magic Words Requirement imposes an unreasonable, unnecessary, and irrational burden upon the fundamental right to vote. A voter who inadvertently marks the name of two candidates, but then corrects her mistake by crossing out, striking through, or scribbling out one of those two candidates, clearly indicating that the voter has made a definite choice in that contest, is nonetheless wholly disenfranchised solely due to her failure to also write a word or phrase on her ballot.

62.     These burdens are not outweighed by any legitimate, much less compelling, state interest. Indeed, Florida law requires that "[a] vote for a candidate or ballot measure be counted if there is a clear indication on the ballot that the voter has made a definite choice." Fla. Stat. § 102.166(4)(a). Here, the Magic Words Requirement operates to invalidate a vote even though the voter

has clearly indicated her definite choice by crossing out, striking through, or scribbling out the erroneous choice. Without relief from this Court, these voters will be deprived of their right to vote, and to have their vote counted, in the November election.

63.     Based on the foregoing, Defendant, acting under color of state law, has unduly burdened and will continue to unduly burden the right to vote of Plaintiffs and their members, constituencies, and the voters who support them, in violation of the First and Fourteenth Amendments to the United States Constitution and protected by 42 U.S.C. § 1983, which will subject them to serious, concrete, and irreparable injuries, including, most immediately, in the 2018 general election. Injunctive and declaratory relief is needed to protect these voters from total disenfranchisement.

## PRAYER FOR DECLARATORY AND INJUNCTIVE RELIEF

### 28 U.S.C. §§ 2201 and 2202, Fed. R. Civ. P. 57 and  65

64.     Plaintiffs incorporate by reference and reallege paragraphs 1 to 63  of this Complaint.

65.     This case presents an actual controversy because Defendant's present and ongoing refusal to count eligible voters' ballots based on unconstitutional

standards subjects Plaintiffs and the voters who associate with them to serious and immediate harms, warranting the issuance of a declaratory judgment.

66.    Plaintiffs seek preliminary and/or permanent injunctive relief to protect their statutory and constitutional rights and avoid the injuries described above. A favorable decision enjoining Defendant would redress and prevent the irreparable injuries to Plaintiffs and their members, constituents, and supporters identified herein, for which Plaintiffs have no adequate remedy at law or in equity.

67.    The State will incur no burden in counting the votes of voters who clearly indicated their definite choice for Florida's U.S. Senate race, but may not have done so in the same manner for every race on the ballot or may not have cancelled-out erroneous overvotes using written words, as the State has already confirmed they are eligible and registered to vote and the voter has provided "a clear indication on the ballot that the voter has made a definite choice" as required by Fla. Stat. Ann. § 102.166.

68.    The public interest weighs strongly in favor of letting every lawful, eligible voter exercise the right to vote and have that vote counted.  The balance of hardships thus tips strongly in favor of Plaintiffs.

69.    Plaintiffs file, concurrent with this Complaint, an emergency motion for preliminary and/or permanent injunctive relief in accord with Local Rule 7.l(L), as a manual recount of overvote and under votes in Florida's U.S. Senate race will begin

28

on November 15 and must be completed no later than noon on Sunday, November 18. It is essential that the motion be decided before the manual recount begins for the relief requested to be effective such that voters are not wrongfully disenfranchised simply because they did not mark their choice for each race in a consistent manner or did not cancel out erroneous overvotes using written words.

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment:

A. Declaring that Rule 1S-2.027(4)(b)'s requirement that a voter must have marked each contest on a ballot "in the same manner" in order for an overvote or undervote to constitute a valid vote violates the First and Fourteenth Amendments to the U.S. Constitution;

B. Declaring that Rule 1S-2.027(4)(c)(15) violates the First and Fourteenth Amendments to the U.S. Constitution to the extent it requires that a voter who inadvertently marks the names of two or more candidates for a race can only correct her mistake by writing certain words on the ballot;

C. Preliminarily and permanently enjoining Defendant, and his officers, employees, and agents, all persons acting in active concert or participation with Defendant, or under Defendant's supervision, direction, or control, and all other persons within the scope of Federal Rule of Civil Procedure 65, including all supervisors of elections and

canvassing boards, from enforcing Rule 1S-2.027(4)(b)'s Consistency Requirement and Rule 1S-2.027(4)(c)(15)'s Magic Words Requirement as an exclusive means of cancelling out an erroneous overvote;

D.     Ordering Defendant, and his officers, employees, and  agents, all persons acting in concert  or participation with Defendant, or under Defendant's supervision, direction, or control, and all other persons within the scope of Federal Rule of Civil Procedure 65, including all supervisors of elections and canvassing boards, to count a vote as valid if the voter has clearly indicated her definite choice for the race at issue as provided in Rule 1S-2.027(4)(c), even if the voter did not mark her definite choice for each contest on the ballot "in the same manner;" and to effectuate this order, directing Defendant to instruct and issue revised guidance to county canvassing boards performing manual recounts;

E.     Ordering Defendant, and his officers, employees, and agents, all persons acting in active concert or participation with Defendant, or under Defendant's supervision, direction, or control, and all other persons within the scope of Federal Rule of Civil Procedure 65, including all supervisors of elections and canvassing boards, to count a vote as valid if the voter selected more than one choice for the race at

30

issue but corrected her erroneous overvote by crossing out, striking through, or scribbling out one of those candidates, even if she did not use written words to communicate the cancellation, and to effectuate this order, directing Defendant to instruct and issue revised guidance to county canvassing boards performing manual recounts;

F.      Permanently tolling and restraining the manual recount deadline of noon on Sunday on November 18, 2018 under Fla. Stat. § 102.141(7)(c) to provide each county with sufficient time to count over- and under-voted ballots that would otherwise have been rejected on the basis of Rules 1S-2.027(4)(b) and 1S-2.027(4)(c)(15) absent relief;

G.      Awarding Plaintiffs their costs, expenses, and reasonable attorneys' fees pursuant to, *inter alia,* 42 U.S.C. § 1988 and other applicable laws; and

H.      Granting such other and further relief as the Court deems just and proper.


Dated: November 13, 2018                    Respectfully submitted,

                                            /s/ Marc Elias
                                            Marc E. Elias
                                            Email: MElias@perkinscoie.com
                                            Uzoma N. Nkwonta*
                                            Email: UNkwonta@perkinscoie.com
                                            PERKINS COIE LLP
                                            700 Thirteenth Street, N.W., Suite 600

Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211


RONALD G. MEYER
Florida Bar No. 0148248
Email: rmeyer@meyerbrookslaw.com
JENNIFER S. BLOHM
Florida Bar No. 0106290
Email: jblohm@meyerbrookslaw.com
Meyer, Brooks, Demma and Blohm, P.A.
131 North Gadsden Street
Post Office Box 1547
Tallahassee, FL 32302-1547
(850) 878-5212

Counsel for Plaintiffs

*Pro Hac Vice* Motion forthcoming