UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| DSCC a/k/a DEMOCRATIC SENATORIAL CAMPAIGN COMMITTEE, and BILL NELSON FOR U.S. SENATE,<br><br>Plaintiffs,<br><br>v.<br><br>KEN DETZNER, in his official capacity as Secretary of State of the State of Florida,<br><br>Defendant. | Case No. 4:18-cv-526 |

**MEMORANDUM OF LAW IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiffs DSCC and Bill Nelson for U.S. Senate, by and through their undersigned counsel, respectfully submit the following memorandum of law in support of their Emergency Motion for a Temporary Restraining Order and Preliminary Injunction.

**PRELIMINARY STATEMENT**

"It has been repeatedly recognized that all qualified voters have a constitutionally protected right to vote *and to have their votes counted*." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964) (emphasis added); s*ee also Common Cause/Ga. v.*

*Billups*, 554 F.3d 1340, 1352 (11th Cir. 2009) ("a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction") (*quoting Dunn v. Blumstein*, 405 U.S. 330, 336 (1972)). This lawsuit seeks to protect that right for scores of Floridians whose overvotes (when the voter selects more choices than allowed for the race at issue) and undervotes (when the voter either makes no selection, or selects fewer choices than allowed) will be hand reviewed as part of the inevitable and imminent manual recount in Florida's neck and neck U.S. Senate race, which is currently in the midst of a statutorily-required machine recount. These voters' fundamental right to vote and to have their votes counted depends on the application of regulatory standards for determining voter intent—*i.e.*, whether the voter's ballot contains a clear indication that the voter in fact made a definite choice in the race.

Here, Plaintiffs challenge two of those rules. *First*, under Rule 1S-2.027(4)(b) of the Florida Administrative Code (hereinafter "Rule 1S-2.027"), a voter's clearly expressed preference can and will be discarded, and her vote *not counted*, solely because the voter did indicate her preference in the *same manner* as she did for *other* races on the same ballot (the "Consistency Requirement"). *Second*, under Rule 1S-2.027(4)(c)(15), a voter's clearly expressed preference can and will be discarded, and her vote *not counted*, solely because she erroneously selected more than one candidate and failed to write certain words on the ballot to cancel out her erroneous

selection, even if she clearly expressed that intent by crossing out, striking through, and/or scribbling out the erroneous selection (the "Magic Words Requirement"). Under both rules, other voters who use *identical* marks to express their preferences in the *same* race at issue will have their votes counted, solely because they happen to express their preference in the same manner in *other* races or because they used written words to indicate an erroneous selection.

Unless enjoined by this Court, enforcement of the Consistency Requirement and the Magic Words Requirement in the imminent manual recount in Florida's U.S. Senate race will result in the denial of equal protection in violation of the Fourteenth Amendment to the U.S. Constitution and an undue burden on the right to vote of scores of Floridians in violation of the First and Fourteenth Amendments. Plaintiffs therefore request that this Court issue an Order, *inter alia*, enjoining Defendant, and his agents, officers, employees, and any person who acts in concert therewith, including canvassing boards and supervisors of election, from rejecting a vote for a candidate—if there is a clear indication on the ballot of the voter's intent to select that candidate as specified in Rule 1S-2.027(4)(c)—solely because the voter failed to satisfy the Consistency Requirement or Magic Words Requirement imposed by Defendant. As detailed below and in the Complaint Plaintiffs file simultaneously with this Memorandum and Motion, such relief is warranted and necessary to prevent immediate, irreparable injury to Plaintiffs and to Florida voters, and to

guarantee Florida citizens the fundamental right to vote in the 2018 General Election.

## STATEMENT OF FACTS

The first unofficial election results of Florida's U.S. Senate race showed Republican Governor Rick Scott ahead of Democratic incumbent Bill Nelson by less than 0.25 percentage points.[1] Under Florida law, "[i]f the unofficial returns reflect that a candidate for any office was defeated or eliminated by one-half of a percent [0.5%] or less of the votes cast for such office . . . a recount shall be ordered of the votes cast with respect to such office." Fla. Stat. Ann. § 102.141(7). Accordingly, on Saturday November 10, Defendant, as Secretary of State, ordered a statewide machine recount in Florida's Senate race, the results of which are due by no later than 3:00 p.m. on Thursday, November 15, 2018.

During the machine recount, all ballots are re-tabulated, or re-fed, through automatic tabulation machines, which identifies and sorts "overvotes" (when a voter may have inadvertently selected more than one candidate) and "undervotes" (when a voter may have selected no candidate at all). However, as Florida law recognizes, the fact that automatic tabulating equipment detects an overvote or undervote does not mean that the voter has not cast a valid vote for a candidate. Voters may use a

[1] John Cherwa, *Recounts ordered in Florida's U.S. Senate and Governor's races*, LOS ANGELES TIMES (Nov. 10, 2018), http://www.latimes.com/nation/la-na-florida-election-recount-20181110-story.html.

variety of ways of marking their ballot that convey their intention to vote for one candidate, but which are not readable by automatic tabulating equipment and are thus coded as undervotes or overvotes. The only way to accurately discern validity of these votes is through manual recount.

If the machine recount confirms that the margin of a particular race is 0.25% or less, then a manual recount of ballots for which the automatic tabulation machines identified as overvotes and undervotes is required. *See* Fla. Stat. Ann. § 102.166(1). Because the margin is already narrower than 0.25% in the U.S. Senate race, it is virtually certain that Defendant will be required to order a manual recount of that race, to be conducted by all 67 county canvassing boards, at or around 3:00 p.m. on Thursday, November 15. Immediately thereafter, local canvassing boards throughout the State must begin the manual recount of overvotes and undervotes for the U.S. Senate race in Florida.

To effectuate this process, the canvassing board must designate "counting teams" to manually review all overvotes and undervotes to determine the voters' intent in the recounted race(s). If a counting team is unable to determine a voter's intent, or if a candidate's representative files an objection to the counting team's decision, then the canvassing board must determine the voter's intent. Rule 1S-2.031(5)(c). The determination of a majority of the canvassing board controls. Fla. Stat. § 102.166(5)(c); Rule 1S-2.031(2)(a). During a manual recount, Florida law

provides that "[a] vote for a candidate [ . . . ] shall be counted if there is a clear indication on the ballot that the voter has made a definite choice." Fla. Stat. § 102.166(4)(a).

Section 102.166(4)(b) also instructs the Department of State to "adopt specific rules . . . prescribing what constitutes a 'clear indication on the ballot that the voter has made a definite choice.'" The Department of State, through Defendant and his predecessors in office, adopted rules purporting to prescribe what constitutes a 'clear indication on the ballot that the voter has made a definite choice.' Those rules are set forth in Rule 1S-2.027. Two of the requirements under Rule 1S-2.027, the Consistency Requirement and the Magic Words Requirement, threaten to wrongfully disenfranchise many eligible Florida voters in the imminent recount in Florida's U.S. Senate race.

**A. The Consistency Requirement**

Rule 1S-2.027 sets forth a two-step test for a manual review of a voter's markings on the ballot to determine whether there is a clear indication on the ballot that the voter has made a definite choice. *First*, Rule 1S-2.027 states that "[t]he canvassing board must first look at the entire ballot for consistency." Rule 1S-2.027(4)(b). The canvassing board must determine whether a) the voter has not marked any other contest on the ballot, or b) if the voter has marked other contests, whether she has marked other contests in the same manner as the contest being

manually recounted. *Second*, if the canvassing board determines that the voter has not marked any other contest on the ballot, or that the voter marked all contests on the ballot in the same manner, the canvassing board applies a set of specific rules to determine whether the voter has made a definite choice in the contest. As a result, in order for a ballot flagged by the automatic tabulation system as an overvote or undervote to be counted, the voter must have marked other contests in the same manner. This Consistency Requirement is subject to only a few limited exceptions. See Rule 1S-2.027(4)(b).[2]

**B. The Magic Words Requirement**

In the course of completing a ballot, it is not uncommon for voters to make a mark for one candidate and then realize that their selection was a mistake or change their mind about which candidate they would like to support. Voters may then mark their ballot a second time for the candidate they support, resulting in an overvote. In

[2] Rule 1S-2.027(b) sets forth three limited exceptions to the Consistency Requirement. First, if a voter marks all of the choices for a single contest, but further clarifies a choice for a particular candidate by placing an additional mark(s) showing support solely for that particular candidate, Rule 1S-2.027 deems such additional mark to constitute a valid vote. Rule 1S-2.027(c)(7). Second, if the voter fills in the majority of an oval, or the majority of the distance between the head and the tail of an arrow designating a particular candidate, Rule 1S-2.027 deems such additional mark to constitute a valid vote regardless of how other races on the ballot are marked. Rule 1S-2.027(c)(10). Third, if the voter marks two or more choices similarly in one of the ways indicated in Rule 1S-2.027(c)(1)-(14) and additionally writes in comments such as “not this,” “ignore this,” “don’t want,” or “wrong,” or “Vote for [candidate’s name],” Rule 1S-2.027 deems such additional written-in comments that “clearly indicate[]” the “voter’s definite choice” to constitute a valid vote.

many cases, voters will attempt to communicate which of the two marked candidates they intend to support. For example, many voters cross out, strike through, or otherwise scribble out the name of one of the candidates. Other voters may add written annotations to their ballot communicating which of the two candidates marked on their ballot is the candidate they intend to select.

Rule 1S-2.027 correctly recognizes that voters who overvote a contest on their ballot may nonetheless provide a clear indication of their choice of candidate that can be determined during the manual recount. However, Rule 1S-2.027 only specifies a single, narrow standard that applies to such overvotes: if the voter marks two or more candidates similarly and additionally writes in "magic words" such as "not this," "ignore this," "don't want," or "wrong," or "Vote for [candidate's name]," such additional written-in comments are deemed to "clearly indicate[]" the "voter's definite choice" and the vote is accordingly counted. Rule 1S-2.027(4)(c)(15). Rule 1S-2.027(4)(c)(15) provides the following example as a valid vote:



No other provision of Rule 1S-2.027 discusses additional ways that a voter who has marked two or more choices can be deemed to have conveyed her intention to correct an erroneous choice and designate her correct choice. For example, no provision of Rule 1S-2.027 provides that a voter who has crossed out with an "X," stricken through, or scribbled out one choice, and then marked a different choice in one of the ways permitted by Rule 1S-2.027(3)(b) or Rule 1S-2.027(4)(c)(1)-(14), has thereby cast a valid vote.

Indeed, Fla. Stat. Ann. § 102.166(4)(b)(2) expressly provides that the rules for determining voter intent may not "[c]ontain a catch-all provision that fails to identify specific standards, such as 'any other mark or indication clearly indicating that the voter has made a definite choice.'" Therefore, the absence of a specific rule specifying other means of cancelling out an erroneous selection besides the use of "magic words" suggests that Defendant requires that the use of such "magic words" is the only acceptable means of cancelling out an erroneous selection and canvassing boards would be loath to depart from the standards explicitly established by Defendant in Rule 1S-2.027.[3]

---

[3] Though Rule 1S-2.031(5)(c)(7) provides that "the canvassing board shall review the outstacked ballots for which a determination of a voter's choice could not be made" and "[b]ased on that review, the board shall notify the Division of Elections to determine if the standards for determining a voter's choice as set forth in law or adopted by rule . . . should be revised to better determine the voter's choice," the process would provide no relief to voters in November 2018 election since such any

## LEGAL STANDARD

In order to obtain a temporary restraining order or preliminary injunction, a plaintiff must establish a substantial likelihood of success on the merits, that it will suffer irreparable injury unless the injunction issues, that the threatened injury outweighs whatever damage the proposed injunction may cause a defendant, and that the injunction will not be adverse to the public interest. *United States v. Florida*, 870 F. Supp. 2d 1346, 1348 (N.D. Fla. 2012) (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)). None of these factors is controlling however. The Court "must instead consider these elements and the strength of the showing made as to each of them together, and a strong showing of (for instance) likelihood of success on the merits may compensate for a relatively weak showing of public interest." *See Fla. Med. Ass'n, Inc*. v. *U.S. Dep't of Health, Educ. & Welfare*, 601 F.2d 199, 203 n.2 (5th Cir. 1979).

## ARGUMENT

Plaintiffs here meet all the requirements for a temporary restraining order and preliminary injunction.

changes from these recommendations would occur after the manual recount for this election is already complete.

## II. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS.

### A. The Consistency Requirement Violates the Equal Protection Clause of the Fourteenth Amendment.

"Having once granted the right to vote on equal terms, the State may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore*, 531 U.S. 98, 104–05 (2000); *Obama for Am. v. Husted*, 888 F. Supp. 2d 897, 905 (E.D. Ohio 2012) ("The . . . Supreme Court has reiterated time and again the particular importance of treating voters equally . . . .") (citing cases). Moreover, "'[t]he right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise.'" *Obama For Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012) (quoting *Bush*, 531 U.S. at 104 (2000)) (citation omitted) (emphasis added). "A citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." *Id.* (quoting *Dunn*, 405 U.S. at 336).

Here, it is all but certain that the ballots of scores of Florida citizens, which were marked as an undervote or overvote in the contest for U.S. Senate, will be manually recounted and canvassing boards across the state will attempt to discern the voters' intent pursuant to the standards set forth in Rule 1S-2.027. Because of the Consistency Requirement, two voters whose ballots contain an identical, clear indication of their choice in the U.S. Senate race will be treated differently solely

based upon how they marked their choices as to *other* contests on the ballot. This requirement is clearly violative of the Equal Protection Clause.

For example, if a voter circles the name of her chosen U.S. Senate candidate, *e.g.* Candidate B in the examples below, but does not fill in the oval for that candidate, under Rule 1S-2.027(c)(2), she has nonetheless clearly indicated on her ballot that she had made a definite choice to vote for Candidate B. However, if she happened to fill in the ovals for her candidate of choice in *other* races on her ballot, her vote for Candidate B for U.S. Senate will be rejected under the Consistency Requirement. (*See* Example A, below). By contrast, a second voter who, like the first voter, circles the name of her chosen U.S. Senate candidate, but also circles the name of her chosen candidates in other races on her ballot, will have her vote for U.S. Senate counted. (*See* Example B, below). Similarly, if a third voter circles the name of her chosen U.S. Senate candidate, and does not make any selection in any other contest on the ballot, her vote for U.S. Senate is counted. (*See* Example C, below).




| | | |
|---|---|---|
| Example A: Invalid Vote for Senator | Example B: Valid Vote for Senator | Example C: Valid Vote for Senator |

In all three examples above, each voter has used an *identical* mark to indicate their chosen candidate for U.S. Senate. Yet these three voters face disparate outcomes: if a voter happens to use the same mark in all contests on her ballot (Example B), or foregoes voting in any other contest at all (Example C), her vote for U.S. Senate is counted. It is only when a voter has chosen to exercise her right to vote in other contests on the ballot, and happens to use different (but otherwise permissible) marks in other contests on the ballot (Example A), that the voter's selection for U.S. Senate is discarded entirely and the voter's vote for that race is simply not counted—*even though the Rule 1S-2.027(c) otherwise expressly provides that circling the name of a candidate constitutes a valid vote*. *See* Rule 1S-2.027(4)(c)(2). As a result, it is the Defendant's Consistency Requirement that

determines whether her vote is counted, rather than whether the voter's mark clearly indicates that the voter has made a definite choice in the race.

These differing standards are plainly inappropriate under any reasonable review under the Equal Protection Clause. A voter in Florida should not have their opportunity to have their vote for U.S. Senate counted depend on whether and how they happened to have marked their choices for other races on their ballot.

### B. The Consistency Requirement Severely Burdens the Right to Vote in Violation of the First and Fourteenth Amendments.

Throwing out votes where the intent of the voter is clear—solely because the voter marked her choices for other races in a different manner—imposes a severe burden on the right to vote in violation of the First and Fourteenth Amendments.

In *Anderson v. Celebrezze*, 460 U.S. 780 (1983) and *Burdick v. Takushi*, 504 U.S. 428 (1992) the Supreme Court laid out a "flexible standard" to resolve constitutional challenges to state election laws. *Anderson*, 460 U.S. at 789. "A court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights . . . that the plaintiff seeks to vindicate against the precise interests put forward by the State as justifications for the burden imposed by its rule, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick*, 504 U.S. at 433-34 (citation and internal quotations omitted). Under this sliding scale, when a regulation subjects the right to vote to a "severe" restriction, the restriction "must be narrowly

drawn to advance a state interest of compelling importance" to pass constitutional muster. *Norman v. Reed*, 502 U.S. 279, 280 (1992). Less severe burdens remain subject to balancing, but "[h]owever slight" the burden on the right to vote "may appear," "it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cty. Election Bd.*, 128 S. Ct. 1610, 1616 (2008) (plurality) (quoting *Norman*, 502 U.S. at 288-89 ).

The outright rejections of the votes of qualified voters for U.S. Senate, based solely on the fact that the voter did not use an identical mark to indicate her selection on all contests on the ballot, unquestionably imposes a severe burden on the constitutional right to vote. *See Fla. Democratic Party v. Detzner*, No. 4:16cv607-MW/CAS, 2016 WL 6090943, at *6 (N,D, Fla. 2016) ("If disenfranchising thousands of eligible voters does not amount to a severe burden on the right to vote, then this Court is at a loss as to what does."). The burden is particularly severe where, as here, there is no doubt that voters' marks for their candidate for U.S. Senate plainly and unequivocally indicate the voter's definite choice in the U.S. Senate contest, and the only reason that they are rejected is the Consistency Requirement—*i.e.*, that the voter indicated her choice for other races on the ballot in a different manner. Indeed, Defendant's own rule sets forth, in great detail, exactly what kinds of marks constitute a clear indication on the ballot that the voter has made a definite choice. *See* Rule 1S-2.027(4)(c). Yet the Consistency Requirement—which is

wholly Defendant's creation and is in no way required by (and is, in fact, contrary to) state statute—effectively supersedes any and all other indicia of voter intent, no matter how clear. So long as the voter has failed to use the exact same mark for all contests on the ballot, the Consistency Requirement overrides anything else the voter can do to adequately convey her intention to cast a vote for her candidate for U.S. Senate. This requirement elevates form over substance, and flies in the face of common sense as well as the requirements of Florida law. *See* Fla. Stat. Ann. § 102.166(4)(a) (a "vote for a candidate [ . . . ] *shall* be counted if there is a clear indication on the ballot that the voter has made a definite choice") (emphasis added).

In the context of voting rights cases, "even one disenfranchised voter—let alone several thousand—is too many[.]" *League of Women Voters of N.C. v. North Carolina ("LOWV")*, 769 F.3d 224, 244 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1735 (2015). In *Stewart v. Blackwell*, 444 F.3d 843 (6th Cir. 2006), for instance, the Sixth Circuit found a "severe" burden where unreliable punch card ballots and optical scan systems resulted in thousands of votes not being counted. *Id.* at 661-62. And, in *Ne. Ohio Coal. for the Homeless v. Husted ("NEOCH")*, 696 F.3d 580 (6th Cir. 2012), the court held that disqualification of thousands of Ohio provisional ballots because they were cast in the right polling location but wrong precinct in multiple precinct polling locations constituted a "substantial" burden on provisional voters. *Id.* at 597. The court reached this conclusion even though such ballots

historically constituted less than 0.248% of all votes cast. *Id. at 593.* Most recently, in *One Wis. Inst., Inc. v. Thomsen,* No. 15-cv-324-jdp, 198 F.Supp.3d 896 (W.D. Wis. 2016), the court found a severe burden where about 100 otherwise qualified voters were disenfranchised because of Wisconsin's voter ID law. *Id.* at 949-50.

Here, it is all but certain that thousands of voters are in danger of being disenfranchised because their ballots are determined not to meet the Consistency Requirement. For example, in the last three presidential contests, the average statewide undervote rate has ranged from .26% to .68%.[4] Moreover, this burden is particularly severe because, as the Defendant himself acknowledges, as of 2016, no Florida county alerts in-person voters of undervotes, and no mechanism exists to let a vote-by mail or provisional ballot voter know that he or she has undervoted one or more contests or to provide an opportunity to correct it.[5] As a result, voters, who are likely unaware of the Consistency Requirement, are not alerted to the presence of an undervote on their ballot or given an opportunity to correct such undervote in a way that satisfies the Consistency Requirement. Accordingly, the Consistency Requirement severely burdens the right to vote, which includes "the right of qualified voters within a state to cast their ballots and have them counted." *United*

---

[4] Florida Department of State Division of Elections, *Analysis and Report of Overvotes and Undervotes for the 2016 General Election*, at 4 (Jan 31, 2017), https://dos.dos.myflorida.com/media/697477/overundervotereport-2016.pdf.
[5] *Id.* at 1.

*States v. Classic*, 313 U.S. 299, 315 (1941); *Stewart*, 444 F.3d at 856-57 (same); *see also* 52 U.S.C. § 10310(c)(1) (defining right to vote as including "casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast").

The burden of Defendant's Consistency Requirement on Florida voters' fundamental right to vote is severe, and there is no corresponding government interest that is "sufficiently weighty" to justify the burden imposed, nor is the Consistency Requirement narrowly tailored to meet any such interest. *Norman*, 502 U.S. at 288-89. In particular, the Consistency Requirement is not necessary to effectuate an orderly and uniform manual recount process. Indeed, Rule 1S-2.027(4)(c) contains a detailed set of standards for evaluating whether a particular mark clearly indicates a voter's definite choice in a particular contest. If the Court were to enjoin the Consistency Requirement, election officials conducting the manual recount would simply apply the exact same standards that they would otherwise apply if the voter had used consistent marks on their ballot.

### C. The Magic Words Requirement Violates the Equal Protection Clause of the Fourteenth Amendment.

It is all but certain that many Florida citizens whose ballot was marked as an overvote in the contest for U.S. Senate will be manually recounted and canvassing boards across the state will attempt to discern the voters' intent pursuant to the standards set forth in Rule 1S-2.027. Because of the Magic Words Requirement, two

voters whose ballots contain an identical, clear indication of their choice in the U.S. Senate race will be treated differently solely based upon whether they also wrote one or more "magic words" on the ballot. This requirement is clearly violative of the Equal Protection Clause.

For example, if a voter fills in the ovals for the names of two U.S. Senate candidates, and then crosses out one of those two names, her vote in the U.S. Senate contest is *not* counted. (*See* Example D, below). By contrast, a second voter who fills in the ovals for the names of two U.S. Senate candidates, then crosses out one of those two names, *and* writes the word "wrong" next to the crossed-out name, her vote in the U.S. Senate contest *is* counted. (*See* Example E, below). Similarly, if a third voter fills in the ovals for the names of two U.S. Senate candidates, then crosses out one of those two names, and then writes the word "Yes" next to the name she has not crossed out, her vote in the U.S. Senate contest *is* counted. (*See* Example F, below).




| | | |
|---|---|---|
| Example D:<br>Invalid Vote for Senator | Example E:<br>Valid Vote for Senator | Example F:<br>Valid Vote for Senator |

In all three cases, each voter has used an *identical* mark—filling in the oval—to indicate her chosen candidate in the U.S. Senate race. Yet these three voters face disparate outcomes: if a voter happens to also write certain words on her ballot in addition to crossing out the name of one of the two candidates, her vote for U.S. Senate is counted (Examples E and F). It is only when a voter crosses out the name of one of the two candidates, but fails to also write certain words on her ballot, that the voter's selection for U.S. Senate is discarded entirely—even though Rule 1S-2.027(4)(c) itself recognizes that voters commonly and reasonably strike through candidates' names in order to convey their intention not to cast a vote for a candidate. For example, Rule 1S-2.027(4)(c)(8) permits voters to cast a valid vote for a candidate by striking through the names of all other candidates in that contest. *See also* Rule 1S-2.027(4)(c)(5) (deeming a horizontal line striking through the name of a candidate as an invalid vote for that candidate). As a result, it is the Magic Words Requirement, rather than whether or not the voter's mark clearly indicates that the voter has made a definite choice in the contest, that arbitrarily determines whether her vote is counted.

These differing outcomes for voters who similarly indicate their intent on their ballots are plainly inappropriate under any reasonable review under the Equal Protection Clause. The Magic Words Requirement will result in the disproportionate

rejection of ballots cast by language minorities and those with limited literacy who may prefer to use cross or strike out erroneous selections rather than use written words. A voter in Florida should not have their opportunity to have their vote for U.S. Senate counted depend on whether they happened to write certain words on their ballot, if the voter has used marks other than words that clearly indicate their selection in the contest. *See Common Cause/Ga.*, 554 F.3d at 1352 ("a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction").

**D. The Magic Words Requirement Imposes a Severe Burden on Florida Citizens' Right to Vote.**

The rejection of votes because of the voter's failure to comply with the Magic Words Requirement imposes a severe burden on the right to vote in violation of the First and Fourteenth Amendments. Where a voter strikes out all but one of the candidates for U.S. Senate that the voter had previously marked, she has plainly and unequivocally indicated her definite choice in the U.S. Senate contest. In such case, it is only the voter's failure to meet the Defendant's Magic Words requirement that prevents the voter's vote from being counted. The Magic Words Requirement—which is wholly Defendant's creation and is in no way required by state statute—is flatly inconsistent with Defendant's own rule, which correctly acknowledges that voters commonly and reasonably strike through candidates' names in order to convey their intention not to cast a vote for a candidate. Rule 1S-2.027(4)(c)(5), (8).

Indeed, Defendant's own rule does not impose a similar magic words requirement upon voters who strike through the names of all other candidates in that contest. *See* Rule 1S-2.027(4)(c)(8).

As a result, Defendant's Magic Words requirement elevates form over substance, and flies in the face of common sense as well as the requirements of Florida law. *See* Fla. Stat. Ann. § 102.166(4)(a) (a "vote for a candidate [ . . . ] *shall* be counted if there is a clear indication on the ballot that the voter has made a definite choice") (emphasis added). In addition, it is all but certain that many voters are in danger of being disenfranchised because their ballots are determined not to meet Defendant's Magic Words Requirement. For example, in the last three presidential contests, the average statewide overvote rate has ranged from at least .15% to .28%, and these rates are an underestimate of the actual prevalence of overvoted ballots.[6] The Magic Words Requirement will also disproportionately burden the right to vote of language minorities and those with limited literacy who may prefer to use cross or strike out erroneous selections rather than use written words.

The burden of Defendant's Magic Words Requirement on Florida voters' fundamental right to vote is severe, and there is no corresponding government interest that is "sufficiently weighty" to justify the burden imposed, nor is this

[6] *Analysis and Report of Overvotes and Undervotes for the 2016 General Election*, *supra* n. 3 at 7, 10.

process narrowly tailored to meet any such interest. *Norman*, 502 U.S. at 288-89. In particular, the Magic Words Requirement is not necessary to effectuate an orderly and uniform manual recount process. Rule 1S-2.027(4)(c) contains a detailed set of standards for evaluating whether a particular mark clearly indicates a voter's definite choice in a particular contest, including two standards that implicate the striking through of a candidate's name. Rule 1S-2.027(4)(c)(5), (8). If the Court were to enjoin the Magic Words Requirement, election officials conducting the manual recount would simply evaluate whether a voter who marked more than one candidate in the U.S. Senate contest either a) wrote words indicating her definite choice of one of the candidates, or b) struck through the names of one or more marked candidates, indicating her definite choice of the marked candidate whose name was not struck through.

## III. THE BALANCE OF HARDSHIPS WEIGHS IN FAVOR OF GRANTING PRELIMINARY RELIEF.

The threatened injury of voter disenfranchisement outweighs any harm that an injunction might cause Defendant. A ruling enjoining Defendant, canvassing boards, and election officials from rejecting votes based solely on the Consistency Requirement or Magic Words Requirement—when there is a clear indication on the ballot that the voter has made a definite choice—imposes no administrative burden on Defendant, who could simply apply existing standards already set forth under Rule 1S-2.027(4)(c). Indeed, Florida law requires that "[a] vote for a candidate or

ballot measure shall be counted if there is a clear indication on the ballot that the voter has made a definite choice." Fla. Stat. § 102.166(4)(a). Any hardship created by an injunction would thus be minimal to nonexistent and is certainly outweighed by the hardship imposed by the unconstitutional deprivation of the equal right to vote. *See Taylor v. Louisiana*, 419 U.S. 522, 535 (1975) (stating "administrative convenience" cannot justify the deprivation of a constitutional right).

## IV. AN INJUNCTION IS IN THE PUBLIC INTEREST.

Finally, the relief that Plaintiffs seek is in the public interest because it will ensure that Floridians are treated fairly, and their validly-cast votes are counted. The public has a paramount interest in elections where every eligible resident may cast an effective vote. *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005); *see also LOWV*, 769 F.3d at 248 ("[t]he public has a 'strong interest in exercising the fundamental political right to vote.'" (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006)); *OFA*, 697 F.3d at 437 ("The public interest . . . favors permitting as many qualified voters to vote as possible.'"). The Consistency and Magic Words Requirements result in wrongful disenfranchisement of Florida voters It serves no public purpose to retain arbitrary requirements that defy Defendant's obligation to count votes if there is a clear indication on the ballot that the voter has made a definite choice, and that will surely result in the improper

rejection of valid votes. Under the circumstances, an injunction barring the State from disenfranchising voters would only promote the public interest.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request that the Court enter a temporary restraining order and preliminary injunction enjoining Defendant, his officers, employees, and agents; all persons acting in active concert or participation with Defendant, or under Defendant's supervision, direction, or control, including the county canvassing boards and supervisors of election and all other persons within the scope of Federal Rule of Civil Procedure 65, from enforcing the Consistency Requirement and Magic Words Requirement. Plaintiffs further request that the Court order Defendant to issue, as soon as practicable, guidance to county canvassing boards consistent with the Court's order.

Dated: November 13, 2018

Respectfully submitted,

/s/ Marc Elias
Marc E. Elias
Email: MElias@perkinscoie.com
Uzoma N. Nkwonta*
Email: UNkwonta@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211

RONALD G. MEYER
Florida Bar No. 0148248
Email: rmeyer@meyerbrookslaw.com
JENNIFER S. BLOHM
Florida Bar No. 0106290
Email: jblohm@meyerbrookslaw.com
Meyer, Brooks, Demma and Blohm, P.A.
131 North Gadsden Street
Post Office Box 1547
Tallahassee, FL 32302-1547
(850) 878-5212

*Counsel for Plaintiffs*
**Pro Hac Vice* Motion forthcoming

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2018, I caused to be electronically filed the foregoing Motion on behalf of the Plaintiffs with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

/s/ Marc E. Elias
Marc E. Elias

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(F), I HEREBY CERTIFY that the enclosed Memorandum of Law of Plaintiffs contains approximately 5,273 words, which is fewer than the total words permitted by the rules of court. Counsel relies on the word count of the computer program used to prepare this memorandum.

Dated: November 13, 2018

/s/ Marc E. Elias
Marc E. Elias
MElias@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W.,
Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211