UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| DSCC a/k/a DEMOCRATIC SENATORIAL CAMPAIGN COMMITTEE, and BILL NELSON FOR U.S. SENATE,<br><br>Plaintiffs,<br><br>v.<br><br>KEN DETZNER, in his official capacity as Secretary of State of the State of Florida,<br><br>Defendant. | Case No. 4:18-CV-00526 |

**PLAINTIFFS' REPLY IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiffs DSCC and Bill Nelson for U.S. Senate, by and through their undersigned counsel, submit the following Reply in support of their Emergency Motion for a Temporary Restraining Order and Preliminary Injunction.

## ARGUMENT

### 1. Intervenor and Defendant Detzner's Arguments Are Based on Mischaracterizations of Plaintiffs' Claims

Intervenor National Republican Senatorial Committee ("NRSC") and Defendant Secretary of State Kenneth Detzner's arguments are fundamentally erroneous because they are based on mischaracterizations of Plaintiffs' position.

NRSC and Secretary Detzner spend the bulk of their briefs setting up and then responding to a red herring—*i.e.*, the false assertion that Plaintiffs seek to discard *all* of Florida's uniform standards for determining voter intent in a manual recount and allow unfettered discretion in its place. To the contrary, however, Plaintiffs challenge two specific rules within the uniform standards as unconstitutional—not the existence of the uniform standards *per se*—and the relief Plaintiffs seek would not result in a return to a "standardless regime" that gives election officials unfettered discretion to determine voter intent. *See* Intervenors' Response, Doc. 26, at 11; *see also* Defendant's Response, Doc. 27, at 13.

Intervenors' serial citations to *Wexler v. Lepore*, 342 F. Supp. 2d 1097 (S.D. Fla. 2004), are unavailing and further illustrate how Intervenor and Defendant misunderstand and misconstrue Plaintiffs' claims. *Wexler* involved a claim that differing standards for manual recounts and optical scan voting systems violated equal protection. *Id.* at 1099. The court rejected the claim because the rules promulgated did not establish a "'nonuniform, differential standard' for conducting manual recounts in those Florida counties using the touchscreen paperless voting systems." *Id*. at 1110. *Wexler* thus merely held that the challenged standards were sufficient and uniform *across Florida counties*, but did not look and did not consider whether individual standards—such as the specific rules challenged here—violated equal protection because they arbitrarily treated similarly situated voters

differently—here, voters who marked their choice for the Senate race identically. This question was unasked and unaddressed in *Wexler*, making the case inapposite here.

**2. The Relief Plaintiffs Seek as to the Consistency Rule Would Not Result in a Return to a "Standardless Recount Method."**

Contrary to Intervenor's and Defendant's erroneous insistence, an injunction prohibiting enforcement of Rule 1S-2.027(4)(b) of the Florida Administrative Code (hereinafter "Rule 1S-2.027"), which requires a voter to have marked any marked contests in the same manner for a ballot flagged as an overvote or undervote to be counted, would not result in a "standardless" recount process. Such an injunction would simply discard one portion of Florida's manual recount standards (an unconstitutional portion), and leave in the place the remainder of the specific, uniform rules—spelled out in Rule 1S-2.027(4)(c)(1) through (15), Rule 1S-2.027(5)(a) through (e), Rule 1S-2.027(6), and Rule 1S-2.027(7)(a) and (b)—which together provide ample, nondiscretionary guidance to be applied uniformly statewide by the counting teams and canvassing boards responsible for the upcoming manual recount.

Intervenor's assertion that circling a candidate's name does not clearly indicate the voter's choice defies logic and flies in the face of the recount rules. Indeed, Rule 1S-2-027(c) expressly provides that circling a candidate's name

constitutes a valid vote. Based on Intervenor's reasoning, if a voter were to circle her choices for the majority of races on the ballot, but fills in an oval for only race, it would be impossible to determine which candidates the voter intended to select, warranting rejection of the entire ballot under the Consistency Rule.

**3. Plaintiff Does Not Seek to Throw Out the Magic Words Requirement, Only to Supplement and Clarify It to Ensure Similarly Situated Voters Are Not Treated Disparately.**

Intervenors also wrongly contend that Plaintiffs seek to facially invalidate Rule 1S-2-.027(4)(c)(15) (the "Magic Words Requirement"), which provides that if the voter erroneously selects two or more choices and additionally writes in comments such as "not this," "ignore this," "don't want," "wrong," or "Vote for [candidate's name]," such additional written comments "clearly indicate[]" the voter's intent to cancel the erroneous overvotes, and the single remaining choice constitutes the "voter's definite choice" and is counted as a valid vote. To the contrary, Plaintiff challenge this rule only to the extent that it is interpreted and enforced to foreclose a finding of a valid vote when a voter has crossed out, stricken through, or scribbled out an erroneous choice—without the use of any written "magic words"—such that only one choice remains selected. Certainly, a voter who fills in the oval for a candidate but then writes "wrong" or other similar word next to the selection has indicated a clear intent to cancel her selection and Rule 1S-2-.027(4)(c)(15) correctly recognizes her choice. Plaintiffs seeks to ensure that a voter

who similarly expresses an intent to cancel an erroneous selection without using written words—such as by crossing, striking, or scribbling out the choice—is not wrongfully disenfranchised by having her ballot arbitrarily rejected despite her clear indication of intent to select the remaining candidate. *See* Plaintiffs' Memorandum, Doc. 3-1, at 18-23.

**4. Intervenor and Defendant's Attempt to Impose an Artificially Heightened Standard on Plaintiffs' Claim and Insulate the Rules at Issue from Any Equal Protection Challenge is Unfounded.**

At the outset, Intervenor wrongly argues that "[o]nly in extraordinary circumstances will a challenge to a state election rise to the level of a constitutional deprivation." Intervenor's Response, Doc. 26, at 12 (citing *Curry v. Baker*, 802 F.2d 1302 (11th Cir. 1986)). *Curry*, however is not at all on point here, as it involved a challenge to specific conduct within an individual election rather than any state laws, making the principles for which it stands entirely irrelevant to this court's consideration. In *Curry*, the individual determined to be the loser of a Democratic primary election in which there were allegations of massive voter fraud filed suit over the decision to declare his opponent the winner. *Id*. at 1305. The court declined to intervene, holding that "[o]nly in extraordinary circumstances will a challenge to a state election rise to the level of a constitutional deprivation," *id*. at 1314, but explained that there is "a distinction between state laws and patterns of state action that systematically deny equality in voting, and episodic events that, despite non-

discriminatory laws, may result in the dilution of an individual's vote. Unlike systematically discriminatory laws, isolated events that adversely affect individuals are not presumed to be a [constitutional violation]." *Id*. (quoting *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980) (internal quotation marks omitted). Plaintiffs here challenge regulations that apply statewide, not isolated events, making *Curry* entirely inapposite.

Similarly, Defendant Detzner makes much of the fact that Plaintiff has presented no evidence that the challenged rules were passed with discriminatory intent, and wrongly insists that because the challenged rules apply statewide, they are "'neutral in character,' and[, therefore,] insulate[d] from any equal protection violation." *See* Defendant's Response, Doc. 27, at 9. This assertion however, plainly misconstrues the applicable law. Even facially neutral laws, applied uniformly statewide, remain subject to an equal protection challenge if they treat similarly situated voters disparately and do not pass rational basis review. *See Arthur v. Thomas*, 674 F.3d 1257, 1262 (11th Cir. 2012) (even law not involving suspect class must pass rational basis review under Equal Protection Clause).

**5. Intervenor's Vote Dilution Argument Is Meritless.**

Intervenor's argument that the injunction Plaintiffs seek would result in vote dilution is puzzling at best. Intervenor cannot plausibly contend that a group has a right to have their votes carry more weight due to enforcement of an unconstitutional

rule, and the authority Intervenor cites does not support their position. For example, *Roe v. Alabama*, 43 F.3d 574, 581 (11th Cir. 1995) is inapplicable here, as it involved removing rules which may have dissuaded voters from voting after an election, thus effectively disenfranchising them in the court's view, and the same claim simply cannot be made of the rules implicated here. Specifically, Alabama had in place requirements that, to cast an absentee ballot, an absentee voter must also include affidavits with either notarization or the signatures of two qualified witnesses, *id*. at 579, and an Alabama state court invalidated these procedures and required that absentee ballots not meeting these requirements be counted in an election which had already occurred. *Id*. The district court granted, and the Eleventh Circuit upheld, an injunction preventing the Secretary of State from complying with this court order, as doing so would "have the effect of disenfranchising those who would have voted but for the inconvenience imposed by the notarization/witness requirement." *Id*. at 581. The same simply cannot be said of the requirements at issue here; rather, the only thing at issue here is whether voters, who believe they have voted, will have their ballots counted by in the manual recount. There can be no legitimate claim that more voters may have voted, and were dissuaded from doing so, by Florida's manual recount procedures, making *Roe* entirely inapplicable here.

Similarly, Intervenor's citation to *Rossello-Gonzalez v. Calderon-Serra*, 398 F.3d 1, 16 (1st Cir. 2004), in support of its vote dilution argument is particularly

puzzling, as *Rossello* only supports Plaintiffs' request for this court to find the laws at issue unconstitutional. In *Rossello,* the court held that "Plaintiffs cannot claim that federal intervention is necessary because a discrete group of voters has been disenfranchised, and because they cannot allege any other harm sufficient to overcome the general rule of non-intervention," *id*., but Plaintiffs here have demonstrated precisely such a group, a group of voters who still today almost certainly believe they voted, and are only excluded from the franchise by the arbitrary and unconstitutional rules put into place by Florida for manual recounts.

**6. Plaintiffs' Motion is Not Barred by Laches or the *Purcell* Principle. Intervenors' Vote Dilution Argument is Meritless.**

Contrary to Defendant's argument, the relief Plaintiffs request is not barred by laches or the *Purcell* principle. In *Purcell v. Gonzalez,* the Supreme Court vacated the 9th Circuit's injunction pending appeal of Arizona's in-person voter ID requirement because such an injunction might "result in voter confusion and consequent incentive to remain away from the polls." 549 U.S. 1, 7 (2006). Plaintiffs' proposed remedy, however, will not cause any voter confusion; in fact, quite the opposite. Many voters likely made their selections in a manner the state deems insufficient and are watching the recount now, confident that their choices are being considered, when in fact their votes are being discarded. Plaintiffs' remedy will impose clear rules that can be uniformly applied across the state and ensure that

these voters' choices are appropriately considered. Further, had Plaintiffs brought the lawsuit much earlier, Intervenor and Defendants would have certainly argued that the issue was not ripe as the prospect of a manual recount remained remote.

**7. The Remaining Preliminary Injunction Factors Support Granting Relief.** Finally, contrary to Intervenor's and Defendant's arguments, the public interest and balance of the equities favor granting injunctive relief. As explained, Plaintiff does not seek to discard the entirety to Florida's recount rules. There will be no risk of partisan bias or "freewheeling canvasser inquiry." Defendant-Intervenor Resp. at 36. Rather, Plaintiff request that the court enjoin implementation of Rule 1S-2.027(4)(c)'s application in scenarios where a voter has clearly indicated their intention to on race, but in a manner that is inconsistent with that done in other races, such as when a voter has crossed out, stricken through, or scribbled out an erroneous choice (without the use of any written "magic words") such that only one choice remains selected. Voters' failure to vote consistently across their ballots or use "magic words" to further indicate their intention does not warrant complete disenfranchisement. There would be no chaos or disruption to the recount process as Intervenor purports because imposing this injunction will only require Defendants to implement already existing standards, but in a manner consistent with the First and Fourteenth Amendments. Indeed, courts have recently ordered changes in election law after the November 2018 election. *Democratic Executive Committee of*

*Florida v. Detzner*, No. 4:18-cv-520-MW/MJF (N.D. Fla. Nov. 11, 2018); *Martin v. Kemp*, No. 1:18-cv-04776-LMM (N.D. Ga. Nov. 13, 2018) (requiring election officials to count previously rejected absentee ballots).

And any purported injury to Defendants is heavily outweighed by the public interest. Indeed, the public has a paramount interest in elections where every eligible vote is counted. *See Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1355 (11th Cir. 2005). Under the circumstances, an injunction prohibiting Defendants from implement the Consistency Requirement and Magic Words Requirement to ensure that properly cast votes are not illogically rejected is plainly in the public interest. The Constitution unequivocally guarantees the right of voters "to cast their ballots and have them counted." *United States v. Classic*, 313 U.S. 299, 315 (1941).

## CONCLUSION

Plaintiffs respectfully request that the Court grant their Emergency Motion for Temporary Restraining Order and Preliminary Injunction.

Dated: November 15, 2018

Respectfully submitted,

/s/ Marc Elias
Marc E. Elias
Email: MElias@perkinscoie.com
Uzoma N. Nkwonta*
Email: UNkwonta@perkinscoie.com
PERKINS COIE LLP

700 Thirteenth Street, N.W., Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211

RONALD G. MEYER
Florida Bar No. 0148248
Email: rmeyer@meyerbrookslaw.com
JENNIFER S. BLOHM
Florida Bar No. 0106290
Email: jblohm@meyerbrookslaw.com
Meyer, Brooks, Demma and Blohm, P.A.
131 North Gadsden Street
Post Office Box 1547
Tallahassee, FL 32302-1547
(850) 878-5212

*Counsel for Plaintiffs*
**Pro Hac Vice* Motion forthcoming

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2018, I caused to be electronically filed the foregoing Reply on behalf of the Plaintiffs with the Clerk of the Court using the ECF system, which will send notification of such filing to all attorneys of record.

/s/ Marc E. Elias
Marc E. Elias

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(F), I HEREBY CERTIFY that the enclosed Reply of Plaintiffs contains approximately 2,138 words, which is fewer than the total words permitted by the rules of court. Counsel relies on the word count of the computer program used to prepare this memorandum.

Dated: November 15, 2018

/s/ Marc E. Elias
Marc E. Elias
MElias@perkinscoie.com
PERKINS COIE LLP
700 Thirteenth Street, N.W.,
Suite 600
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-6211