# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**DEMOCRATIC SENATORIAL CAMPAIGN COMMITTEE, AND BILL NELSON FOR U.S. SENATE,**

       ***Plaintiffs*,**

**v.**                     **Case No. 4:18-CV-526-MW/MJF**

**KEN DETZNER, IN HIS OFFICIAL CAPACITY AS FLORIDA SECRETARY OF STATE,**

       ***Defendant,***

**and**

**NATIONAL REPUBLICAN SENATORIAL COMMITTEE,**

       ***Intervenor Defendant.***

_____/

## ORDER DENYING PRELIMINARY INJUNCTION[1]

    This case involves Florida laws that create standards for election canvassing boards to attempt to determine voter intent when the voter has not properly filled out their ballot. The so-

---

[1] This Court recognizes that time is of the essence because manual recounts have already begun. Moreover, this Court wishes to afford the parties a meaningful opportunity to file an appeal. Accordingly, this order issues on an expedited basis.

called consistency and magic words rules are used to determine voter intent during a manual election recount.

The issue in this case is whether the use of these reasonable and neutral rules is constitutional. It is.

## I

Under Florida law, if the unofficial return of ballots reflects that a candidate for any office was defeated by 0.5%, a machine recount of the votes cast shall be ordered. § 102.141(7), Fla. Stat. (2018). To conduct a machine recount, county canvassing boards shall put each ballot through automatic tabulating equipment and determine whether the returns correctly reflect the votes cast. *Id.* at § 102.141(7)(a).

The canvassing boards must submit on forms provided by the Division of Elections a second set of unofficial returns to the Department of State no later than 3 p.m. on the 9th day after a general election in which a recount was ordered. *Id.* at § 102.141(7)(c). During the machine recount, the machine used must be able to identify over- and undervotes. § 102.166(2)(b), Fla. Stat.

If the second set of unofficial returns indicates that a candidate for any office was defeated by 0.25% or less of the votes, a manual recount of overvotes and undervotes shall be ordered. § 102.166, Fla. Stat. A manual recount will not be ordered if the candidate defeated requests in writing it not be held or the number of overvotes and undervotes is fewer than the number of votes needed to change the outcome of the election. *Id.* at § 102.166(1)(a)-(b). An overvote occurs when a voter selects more choices than allowed for the race at issue. An undervote occurs when the voter makes fewer choices than allowed. A manual recount must be open to the public. *Id.* at § 102.166(3).

During the manual recount, "[a] vote for a candidate or ballot measure shall be counted if there is a clear indication on the ballot that the voter has made a definite choice." *Id.* at § 102.166(4)(a). This determination is made by "counting teams." *Id.* at § 102.166(5)(a). The county canvassing board shall appoint counting teams of at least two voters to manually recount ballots and when possible, the team should be of at least two political parties. *Id.* If a counting team cannot determine whether the ballot contains a clear indication that the voter made a definite choice, the ballot should be presented to the county canvassing board for

3

determination. *Id.*at § 102.166(5)(c). The manual recount must be conducted within view of observers from each of the impacted candidates who also have an ability to raise an objection. Fla. Admin. Code Ann. r. 1S-2.031(3)(d).

The Department of State is required to adopt "specific rules . . . prescribing what constitutes a clear indication on the ballot that the voter has made a definite choice." § 102.166(4)(b), Fla. Stat. These rules must not "exclusively provide that the voter must properly mark or designate his or her choice on the ballot" or "contain a catch-all provision that fails to identify specific standards." *Id.* Pursuant to this direction, the Department promulgated Rule 1S-2.027 of the Florida Administrative Code. Rule 1S-2.027 provides detailed guidance to determine whether "the voter had clearly indicated a definite choice for purposes of counting a vote cast on a ballot in a manual recount." Fla. Admin. Code r. 1S-2.027(1).

When a manual recount has been ordered, by rule, the canvassing board "must first look at the entire ballot for consistency." *Id.* at r. 1S-2.027(4)(b). For example, if a voter failed to properly darken the oval to vote, but circled the candidate's name instead for every race, that would be a valid vote because it

4

was consistently marked. This is called the consistency rule. Next, the rule provides that certain marks "constitute a valid vote as indicated for a particular candidate." *Id.* at r. 1S-2.207(4)(c). The marks are limited and provided in the rule. For example, if the voter circles or underlines a candidate name, it is a valid vote. *Id.* at r. 1S-2.027(4)(c)3. Additionally, if the voter marks an "X," a check mark, a cross, a star, or a plus sign, it will also be a valid vote. *Id.* at r. 1S-2.027(4)(c)4. And if the voter writes the words "Vote for [candidate's name]," "Count this vote," or "I want this one" it is a valid vote. *Id.* at 1S-02.027(4)(c)9. In addition to clear textual guidance, the rule provides picture examples of valid and invalid votes. This is called the magic words rule. These rules only apply where a voter has not marked the ballot "as specified in the ballot instructions." *Id.* at 1S-2.027(4)(a).

II

No party in this case has raised any affirmative defenses so this Court can proceed directly to the merits.

Under Rule 65 of the Federal Rules of Civil Procedure, a district court may grant a preliminary injunction "only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless

5

the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc). Although a "preliminary injunction is an extraordinary and drastic remedy," it nonetheless should be granted if "the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson Cty.*, 720 F.2d 1511, 1519 (11th Cir. 1983) (quoting *Canal Auth. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974)).[2] None of these elements, however, is controlling; rather, this Court must consider the elements jointly, and a strong showing of one element may compensate for a weaker showing of another. *See Fla. Med. Ass'n, Inc. v. U.S. Dep't of Health, Educ., & Welfare*, 601 F.2d 199, 203 n.2 (5th Cir. 1979).

## A

This Court will first address whether the Plaintiffs have met their burden in establishing a substantial likelihood of success on

---

[2] Decisions of the Fifth Circuit prior to October 1, 1981, are binding within the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

the merits. They have not. Generally, state election laws that burden the fundamental right to vote are analyzed under the *Anderson-Burdick* standard. *Obama for Am. v. Husted*, 697 F.3d 423, 429 (6th Cir. 2012). Under *Anderson-Burdick*, a court considering a challenge to a state election law "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interest put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights' " *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (citing *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). When an election law imposes only reasonable, nondiscriminatory restrictions upon the constitutional rights of voters, the states' important regulatory interests are generally sufficient to justify the restrictions. *Id.* (citing *Anderson*, 460 U.S. at 788).

In this case, the asserted injury is outweighed by the state's interest. The alleged injury in this case is that during a manual recount, voters are at risk of their votes not being counted because of the consistency and magic words requirements. Plaintiffs

7

alleged this is a severe burden on the right to vote. During a manual recount, canvassing boards will apply the consistency rule and magic words rule only if the voter did not mark their ballot "as specified in the instructions." Fla. Admin. Code r. 1S-2.027(4)(a). Undoubtedly, the state can promulgate rules on how voters should fill out their ballots—form not content—so the ballots can be counted. Indeed, without such rules, it would be impossible to determine the result of an election. If a voter fails to follow reasonable rules—and having to fill in an oval is reasonable—the state has not burdened the right to vote. Similarly, when the state applies a neutral, reasonable, standard practice—like the consistency and magic words rules—to try to determine the intent of a voter, when the voter has not followed instructions, the state has not burdened the right to vote. Moreover, the potential that some ambiguously casted votes are not counted is outweighed by the state's interest. At this point, the manual recount has begun. Canvassing boards have been trained and used these procedures in prior manual recounts. The rules are clear and provide examples. To enjoin the use of the rules at this point would likely create a bigger problem.

8

Aside from *Anderson-Burdick*, the standards used to determine voter intent during a manual recount must be uniform so that votes have an equal chance of being counted. *Bush v. Gore*, 531 U.S. 98, 106-08 (2008). The consistency and magic words rules comply with this requirement. *See Wexler v. Lepore*, 342 F. Supp. 2d 1097, 1108 (S.D. Fla. 2004). They are uniform, nondifferential standards that provide a reasonable procedure to determine the intent of voters. This is not to say the rules are perfect or the best way to do things. But they are constitutional.

B

As noted above, there are three additional factors in determining whether to grant an injunction: irreparable injury, the balance of the equities, and the public interest. The Defendants suggests the Plaintiffs have not shown an irreparable injury because they have waited too long to assert their rights. This Court rejects that argument because Plaintiffs would not have had standing to sue until they knew a manual recount would occur in this election.

Regardless, the balance of the equities weighs in favor of the Defendants. These rules have been used for nearly ten years, and they are clear, uniform rules that election officials have been

trained to apply. To enjoin the use of these rules now would create a substantial hardship on the Defendants. Finally, the public interest is not determinative. These rules guide officials in counting votes that would not have otherwise been counted. And they are uniform, definite rules. This is in the public interest. But as Plaintiffs point out there are situations where voter intent is likely clear but not valid under the rules, and thus not counted. This is contrary to the public interest. On balance, the Plaintiffs have failed to make the necessary showing for the grant of a preliminary injunction.

The motion for a preliminary injunction, enjoining the use of the consistency and magic words rules as stated in Florida law, during a manual recount, is **DENIED**.

**SO ORDERED on November 15, 2018.**

**s/Mark E. Walker**
**Chief United States District Judge**